UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GALE VERE,

    Plaintiff,

v.

CITY OF ADRIAN *et al.*,

    Defendants.

_____/

Case No. 15-cv-10745
Hon. Matthew F. Leitman

## **OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #30) AND DENYING PLAINTIFF'S MOTION TO FILE AMENDED COMPLAINT (ECF #36)**

In this action, Plaintiff Gale W. Vere ("Vere") claims that the City of Adrian (the "City") and one of its employees, Heather Laskey (collectively, "Defendants"), violated the Equal Protection Clause of the Fourteen Amendment when they refused to hire him because he resided outside of the City. The Defendants have moved for summary judgment on that claim (*see* the "Motion for Summary Judgment," ECF #30), and Vere has filed a motion to amend his Complaint (the "Motion to Amend," ECF # 36). For the reasons explained below, Defendants' Motion for Summary Judgment is **GRANTED** and Vere's Motion to Amend is **DENIED**.

1

## ESSENTIAL FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Vere lives in Adrian Township, Michigan. (*See* Compl. at ¶ 2, ECF #1 at 2, Pg. ID 2.) In April 2012, October 2012, and January 2014, he applied for employment with the City of Adrian, a municipality that is adjacent to Adrian Township. (*See id.* at ¶ 6, ECF #1 at 2, Pg. ID 2.) At the time of Vere's applications, the City had a policy favoring its residents in the employment application process. The policy provided that "[i]f the qualifications of two applicants for new hires are equal, the applicant living within the city limits shall be given job preference" (hereinafter, the "Policy"). (*See* ECF #30-9 at 3, Pg. ID 392.)

The City did not interview Vere for any of three positions for which he applied and it ultimately hired other applicants. (*See id.* at ¶ 7, ECF #1 at 2, Pg. ID 2.) The City filled two of the positions with residents and one with a non-resident. (*See* Mot. Summ. J., ECF #30 at 12-14, Pg. ID 219-21; Pl.'s Resp. Br., ECF #32 at 9, Pg. ID 413.)

In December 2013, Vere filed a complaint against the City with the United States Equal Opportunity Employment Commission (the "EEOC"). In that complaint, he alleged that the City discriminated against him based upon his age when it declined to hire him for the first two positions. The City responded that it had non-discriminatory reasons for its decision not to hire Vere. The City

explained, among other things, that it chose particularly well-qualified applicants for the positions, and it added that it "gave a preference to applicants that lived within city limits, as [the City] believes that employees residing within the city limits have a vested interest in city operations because they are directly affected." (ECF #30-3 at 5, Pg. ID 272.)

After reviewing the City's response to his EEOC filing, Vere filed this action against the City and two of its employees: Heather Laskey and Dane Nelson.[1] (*See* Compl., ECF #1.) Vere alleged that the Defendants violated his right to equal protection of the laws when, pursuant to the Policy, it treated his non-residency as a factor in their decision not to interview and/or hire him for the three positions. (*See* Compl. at ¶¶ 9-14, ECF #1 at 2-3, Pg. ID 2-3.)

On May 22, 2015, the Court entered a scheduling order setting deadlines for, among other things, fact discovery cutoff, expert disclosures, and filing dispositive motions (the "Scheduling Order"). (*See* ECF #18.) The Scheduling Order directed the parties to complete fact discovery by December 31, 2015. (*See id.* at 1, Pg. ID 67.) The Court later entered a stipulated order extending fact discovery through March 29, 2016. (*See* ECF #24.) On April 29, 2016, after the close of fact discovery, the Defendants moved for summary judgment. (*See* ECF #30.) On

---

[1] Nelson was dismissed from this action on January 15, 2016. (1/15/2016 Dkt. Entry.)

June 24, 2016, the Court scheduled a hearing on that motion for July 13, 2016. (*See* Notice of Hearing, ECF #35.)

On June 29, 2016 – approximately three months after the already-extended fact-discovery cutoff, two months after the Defendants moved for summary judgment, and fourteen days before the scheduled hearing on that motion – Vere filed the Motion to Amend. (*See* ECF #36.) In that motion, Vere sought to add claims based, in part, upon alleged acts that occurred *after* the already-extended discovery cutoff and *after* the Defendants moved for summary judgment. More specifically, Vere's proposed Amended Complaint seeks to add claims that the Defendants violated the Equal Protection Clause, the First Amendment, and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* (the "ELCRA"), *in June of 2016* when they hired someone else to serve in the City's Finance Department. (*See* Motion to Amend, ECF #36-1 at 5-6, Pg. ID 615-17.) The proposed Amended Complaint also adds a new Defendant, Cindy Prue. (*See id.* at 1, Pg. ID 612.)

## THE MOTION FOR SUMMARY JUDGMENT

**A.  Governing Legal Standard**

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477

4

U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

**B.     Analysis**

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011)). Non-residents of a municipality "do not constitute a suspect class" under the Equal Protection Clause. *Hudson Cty. Bldg. & Constr. Trades Council v. City of Jersey City*, 960 F. Supp. 823, 832 (D.N.J. 1996) (citing *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 389 (1978)); *see also Assoc. of Cleveland Fire*

5

*Fighters v. City of Cleveland*, 502 F.3d 545, 549 (6th Cir. 2007) (noting that a municipal employer's residence requirement did not "make[] classifications along suspect lines."). Thus, in order to establish that the Defendants violated the Equal Protection Clause, Vere must show that the consideration of his non-residency impermissibly burdened one of his fundamental rights or lacked a rational basis. He has failed to make either showing.

**A.    The Policy Does Not Burden Vere's Fundamental Rights**

Vere has not established that the Defendants burdened any of his fundamental rights in any way.  He contends that they infringed his fundamental right to travel when they counted his non-residency against him, but that argument cannot be squared with the controlling Supreme Court precedent.

The Supreme Court "frequently has considered constitutional challenges to residence requirements," and it "always has been careful to distinguish . . . durational residence requirements from bona fide residence requirements." *Martinez v. Bynum*, 461 U.S. 321, 325 (1983).  Durational residence requirements "condition receipt of a benefit on *a minimum period of residence* within a jurisdiction." *Id.* (emphasis added).  These requirements burden "the constitutional right to travel from one statement to another" – a right that "occupies a position fundamental to the concept of our Federal Union" and which "has been firmly established and repeatedly recognized." *Shapiro v. Thompson*, 394 U.S. 618, 637

6

(1969) (quoting *United States v. Guest*, 383 U.S. 745, 757-58 (1966)), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974).

In contrast, a bona fide residence requirement does not condition receipt of a benefit upon any minimum period of residency; it "simply requires that the person *does* establish residence before demanding the services that are restricted to residents." *Martinez,* 461 U.S. at 329 (emphasis in original). Bona fide residence requirements, in general, do "not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there." *Id.* And, more specifically, a bona fide residence requirement for public employment – i.e., a requirement that a public employee live within the employing jurisdiction, albeit not for any fixed period of time before commencing employment – does not "burden" an employee/applicant's "right to travel." *Assoc. of Cleveland Fire Fighters*, 502 F.3d at 549.

Here, the Policy is plainly a bona fide residence requirement, not a durational one.[2] The Policy's plain language – which provides that "[i]f the qualifications of two applicants for new hires are equal, the applicant living within the city limits shall be given job preference" – imposes *no* minimum period of City residency for the applicant to receive "job preference." (ECF #30-9 at 3, Pg. ID 392.) Indeed, an applicant who has lived in the City for a week (or even a day)

---

[2] The court refers to the City's Policy as a "residence requirement" for ease of reference.

7

would receive the same hiring preference as a person who has lived in the City for twenty years. Because the Policy "simply requires that [an applicant] does establish residence before" he is entitled to the hiring preference, it is a bona fide requirement. *Martinez*, 461 U.S. at 328.

Vere resists this conclusion. He insists that the Policy creates a durational residence requirement even though it says nothing about any minimum fixed period of residence. In support, Vere relies on two cases – *Grace v. City of Detroit*, 760 F. Supp. 646 (E.D. Mich. 1991) and *Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002) – but neither convinces the Court that the Policy imposes a durational residence requirement.

In *Grace*, the plaintiffs challenged residence requirements established by a City of Detroit ordinance. That ordinance required that all applicants for positions "in the city service be residents at the time of the application." *Grace*, 760 F. Supp. at 648. The record before the court established that, in "practical effect," the ordinance imposed a durational residence requirement:

> The period of time between application and certification may be as long as three years, depending upon the nature of the job and the number of applicants for a position in city service. The period from application through the formulation of an eligibility list ranges from two months to a year depending upon the same criteria. The practical effect of these requirements is to impose a residency requirement of substantial duration, for the mere opportunity to compete without any certainty of ultimate success.

8

*Id*. at 649.³  Unlike the plaintiffs in *Grace*, Vere did not identify (in his motion for summary judgment and supporting brief) any evidence that the City's application process is so inordinately lengthy that, in "practical effect," the Policy imposes a durational requirement.  Thus, *Grace* is not on point.

And even if the facts of this case were closer to *Grace*, the Court would respectfully decline to follow *Grace*.  The Court is not aware of (and Vere has not identified) any other decision that has treated a residence requirement with *no* expressly-stated minimum duration as a durational requirement.  And the Court is concerned that the approach in *Grace* – treating a residence requirement for employment as durational merely because there is a time lag between application and decision – could erroneously transform almost every residence requirement for government employment into a durational one.  Moreover, the majority of federal courts addressing residence requirements like the one at issue in *Grace* – ones with no expressly-stated duration – treat those requirements as bona fide, not durational. *See, e.g.*, *Andre v. Bd. of Trustees of Village of Maywood*, 561 F.2d 48, 52-53 (7th Cir. 1977) (city ordinance establishing hiring preference for city residents without regard to length of residency was a bona fide residence requirement); *Van Deelen v. City of Kansas City*, 411 F. Supp. 2d 1105, 1127 (W.D. Mo. 2006) (same).

---

³ The decision in *Grace* was issued on "cross motions for summary judgment." *Grace*, 760 F.Supp. at 647.

Indeed, Vere has not cited any decision other than *Grace* that treats residence requirements with no stated time frame as durational. The Court will follow the majority approach to classifying residence requirements and will not follow *Grace*.

In *Johnson*, the United States Court of Appeals for the Sixth Circuit considered the constitutionality of a municipal ordinance that established so-called "drug-exclusion zones" – geographic areas that persons with certain drug-related criminal records could not enter for a period time. *See Johnson*, 310 F.3d at 487. The court held that the ordinance unconstitutionally burdened the fundamental right to intrastate travel. But *Johnson* does not support Vere's argument that the Policy created a durational residence requirement because the court emphasized that the case did "*not involve* [any type of] *continuing residency requirement*." *Id.* at 494 (emphasis added). Instead, the case "involve[d] a constitutional challenge to an ordinance that excludes certain individuals from high crime areas of the city, and presents issues of access not raised in [an earlier decision involving a residence requirement]." *Id.* Simply put, *Johnson* says nothing about whether the Policy amounts to a durational residence requirement. The Court remains convinced that the Policy establishes a bona fide residence requirement that does not impose any burden on Vere's fundamental right to travel.

### B. The Policy Is Rationally Related to a Legitimate Government Interest

Bona fide residence requirements like the Policy are subject to rational basis review. *See Martinez*, 461 U.S. at 329 n.7; *Wardwell v. Bd. of Educ. of City School Dist. of Cincinnati*, 529 F.2d 625, 628 (6th Cir. 1976). Rational basis review requires only that the residence requirement be "rationally related to a legitimate government purpose." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "The burden is upon the challenging party to negative '*any reasonably conceivable* state of facts that could provide a rational basis for the classification.'" *Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001) (emphasis added) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). The Policy easily passes the rational basis test.

As one federal court has explained, there are a number of legitimate reasons that a municipal employer may favor its own residents, including

> the recruitment and retention of employees who are highly motivated and deeply committed to the city in which they live in work, enhancement of the quality of employee performance due to the greater knowledge of City conditions and the greater personal stake in the City's progress, reduction in absenteeism and tardiness due to the proximity of the employee's work and home, the availability of employees trained to respond to emergency situations, and the general economic benefits flowing from local expenditure of employee's salaries.

*Van Deelen*, 411 F. Supp. 2d at 1127; *see also Wardwell*, 529 F.2d at 627-28 (identifying many "rational bases" supporting a school district's policy of requiring

11

its teachers to reside within the district). Given these legitimate interests, several federal courts have held that municipal/governmental employer residence requirements withstand rational basis review. *See, e.g.*, *Van Deelen*, *supra*; *Salem Blue Collar Workers Assoc. v. City of Salem,* 33 F.3d 265, 271 (3d Cir. 1994) (applying rational basis test and upholding municipal employer's residence requirement); *Wardwell*, *supra.* Here, the Policy may reasonably further the legitimate interests identified above, and it therefore survives rational basis review.

In sum, for all of the reasons above, the Court concludes that the Policy does not violate the Equal Protection Clause and that the Defendants are entitled to summary judgment on the equal protection claim in Vere's Complaint.

## THE MOTION TO AMEND

As described above, in the proposed Amended Complaint, Vere seeks to add (1) new legal theories, (2) new factual allegations based on acts and omissions occurring after the close of discovery and completion of summary judgment briefing, (3) new claims, and (4) a new defendant. Even under the liberal standards for amendment under Federal Rule of Civil Procedure 15(a), the proposed amendments should not be allowed.

The Sixth Circuit has identified the factors that a district court should consider when deciding whether to grant a party leave to amend its complaint:

> Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, the repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not a sufficient reason to deny a motion to amend. *Notice and substantial prejudice to the opposing party are [the] critical factors in determining whether an amendment should be granted.*

*Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994) (emphasis added) (quotation omitted). Here, the "critical factors" of notice and prejudice weigh heavily against allowing Vere's proposed amendment.

Most importantly, permitting Vere to amend his Complaint to add new factual allegations and new claims following the close of discovery, and after Defendants have moved for summary judgment, would cause Defendants substantial prejudice. Indeed, the Sixth Circuit has recognized "that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree." *Duggins v. Steak 'N Shake*, 195 F.3d 828, 834 (6th Cir. 1999) (citations omitted); *see also Miller v. Admin. Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions on the issue of immunity was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court."). Moreover, as the Second Circuit has explained, "a

13

proposed amendment" is "especially prejudicial" when discovery is complete and the defendant has "already filed a motion for summary judgment." *Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (quoting *Ansam Assoc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)). The prejudice under these circumstances arises because the proposed amendments "would require a new wave of discovery" and would substantially "delay the final disposition of the action." *Id.* Simply put, the Defendants would suffer material and unfair prejudice if, at this extremely late stage in the proceedings, the Court allowed Vere's amendment, re-opened discovery, and effectively "turned back the clock" in this action.

In addition, at no point during discovery did Defendants have notice that they could potentially have to defend against Vere's new proposed claims. Indeed, they could not have had such notice because some claims are based upon alleged acts and omissions that occurred after discovery closed. This lack of notice further weighs against allowing the proposed amendments.

Vere argues that the Court should allow the proposed amendments because Rule 15(a) embodies a liberal policy in favor of allowing amendments, he did not delay in seeking to amend once he learned of the alleged facts underlying the proposed new claims, and the proposed amendments are not futile. (*See* Motion to Amend, ECF #36 at 4-5, Pg. ID 609-10.) On the facts of this case, these factors

14

are not sufficient to justify the addition of new claims and new factual allegations. If Vere wishes to pursue these new and additional claims, he may file a separate action against Defendants.[4] In short, the prejudice from the proposed amendments at this advanced stage and the lack of notice to Defendants outweigh the factors Vere identifies. The Court will not permit Vere to file his proposed Amended Complaint.

## CONCLUSION

For the reasons explained above, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF #30) is **GRANTED** and the Motion to Amend (ECF #36) is **DENIED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: July 20, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 20, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

---

[4] The Court expresses no opinion as to whether Defendants may interpose the judgment here as a defense to any claims that Vere may attempt to assert in a future action.